On behalf of the F1, Ms. Kelli Weck. On behalf of the F1, Mr. Scott Jacobson. Good morning, counsel. This way. May it please the court. Good morning, your honors. Good morning, counsel. I represent Michelle Green, who is asking this honorable court to reverse her conviction for insulting and provoking or provoking domestic battery. Parents have a constitutional right to raise their children as they see fit and a societal responsibility to discipline them. The evidence in this case shows that Michelle's 9-year-old son, Rafael, was upset and acting up because Michelle had not allowed him to go to an after-school dance, and inside the parked car, Rafael was so mad that he was hitting at the windows. At some point, Rafael and Michelle ended up outside the car, and Michelle disciplined Rafael for misbehaving by swatting him with a snowbrush on his snow-suited body between 8 and 16 times, and the child suffered no physical injury. There is no legal precedent by which Michelle's discipline of Rafael could constitute wanton and egalist cruelty, which is the standard by which discipline should be judged whether it is reasonable or unreasonable. There is no published case in which a parent has been found guilty of insulting or provoking domestic battery, and there is no case in which a parent has been found guilty of any form of domestic battery when the child has suffered no bodily harm at all, as in this case. In fact, courts have found that parents have exercised reasonable corporal punishment even in cases in which the child has sustained some minor injuries or bruising, or when the parent has used an object or a teacher has used an object such as a snowbrush to administer the punishment. So we are asking this court to find that the force used to discipline must be considered reasonable when there is no physical injury to the child. What's our standard of review here? We're asking for de novo review because the facts are undisputed. How is it de novo? The facts are undisputed that Michelle was administering 8 to 16 beatings, swats with a snowbrush, and Rafael suffered no bodily harm. So the question is a legal question, whether or not the punishment that she was administering was reasonable corporal punishment. That's the legal question. Was she exercising discipline, and was it reasonable? Are legal questions, not really a factual question. That's why de novo is the standard review that would be appropriate. Well, I mean, if we're talking about a case of self-defense and whether someone was reasonable in their belief that they needed to use deadly force, I mean, how would that be reviewed on review? Are you speaking of a case cited in the state's brief earlier? We're talking in general. We're talking about a reasonable. The trial court in this case found your client's conduct to be unreasonable and an unreasonable exercise of corporal punishment, correct? Correct. All right, so were to review that unreasonable finding in a de novo fashion? Yes. It's undisputed that the facts are in this case. So when the facts are undisputed, the standard of review is de novo. So any kind of facts are undisputed. Whether or not someone was reasonable or unreasonable in their belief in the justifiable use of deadly force, we would always have de novo review on the self-defense case. Well, I'm thinking a self-defense case wouldn't ordinarily in that case the defendant be testifying somehow that they had. . . They didn't have to be, as long as there's slight evidence in the record that they were exercising reasonable use of force. It just seems like this is the kind of the question is whether or not it's reasonable is a legal question. And the case cited by the state in the opening was actually miscited in their brief. They said that the trial court aired the question of whether reasonable force was used as a question of fact to be determined by the trier of fact. For consideration of all the evidence is the quote from this Connelly case on state's brief, page 3, when in fact what that case actually said was the question on whether the use of force was justified was the question to be determined by the trial court. So in this case. . . Couldn't the question be whether or not the defendant took unreasonable steps to discipline her child? I guess. . . That was for the trial court to decide whether or not it's reasonable. The issue is whether this is where it gets into the reasonable is kind of a vague, slippery sort of term. So the standard in Illinois has been looking at legal precedent. The only times in which discipline has been found to be unreasonable is when the child has suffered bodily harm. So we're asking to find that this is not even a correct conclusion by the trial court to find this was unreasonable. This is the sort of problem that Justice Wolfson was talking about in this Henry J.P. case in which he said that judges are not to interfere and insert their own beliefs about parenting standards into a case. But aren't you really asking that a per se rule be established here that when there's no injury inflicted that it's per se reasonable? Well, thinking about it, this is basically what, you know, I'm trying to think of hypotheticals outside of this realm. But when there is no bodily harm, how under the case law precedent can this be considered unreasonable? So if your child is, say, in a snowsuit or a big, thick jacket, you can be with impunity because it's going to leave no marks. Well, it comes down to the question then, I suppose, of can a parent be found guilty of insulting or provoking bodily domestic battery? Because in this case there is no physical injury. Is all punishment insulting or provoking to a child? That would be our position. I mean, most children are going to feel insulted or provoked in some manner when a parent is disciplining them. I'm thinking of an example when I called my mother a name as a teenager and she inserted a bar of soap in my mouth. I was very insulted and provoked by that. It didn't leave any lasting bodily harm. But that punishment didn't exceed the bounds of reasonableness, did it? Some people, some judges might say that, I suppose. You know, it would be like a judge might say, well, you know, is that a, you know, that would be inserting their own thoughts about parenting standards into a case to say, well, I think this is just wrong to stick a bar of soap in someone's mouth. What if she was using a bat? Excuse me? She meaning which? She meaning the defendant, your client in this case. What if your, yeah, not your mother. Sorry. No, what if your client was using a bat? I mean, your client was wielding a bat against her child in a school parking lot to discipline the child. And it just happened to result in no injury. But then your rule would be that that would be no harm, no fault. Well, if, in fact, there was no bodily harm, no physical injury, then the parent would be held. It would be per se reasonable to wield a bat against your child. If there's no bodily harm whatsoever, I mean, it's hard to fathom that I would not leave some kind of damage. I'm just saying, what if, I mean, she's a bat shot, who knows? I mean, I'm just saying, what if, you know, you have a situation that's more egregious? You know, here is a two-and-a-half-foot-long snow brush. What if it was a bat or a chain or a metal pipe? Well, all those objects would typically, one would expect, be a little more heavy-duty, perhaps, than a snow brush. So that wasn't what she used in this case. So are there other factors that the courts have taken into account in looking at the reasonableness? Like, was the punishment inflicted in anger? Was the parent out of control during the infliction of the punishment, whether or not bruises were left or injury was inflicted? They don't really seem to be focusing too much on the parent's anger standards, this and that. There was this case, I believe it was FW, in which they talked about other factors that can be examined to look at. Right. You know, is this likely to reoccur? You know, what's the child's attitude afterwards? Exactly. Okay. In this case, we have the judge actually making the finding that this seems to be a very happy little boy. He's there in court testifying that day, and he doesn't seem to be a child that's abused. And clearly, he was not taken out of the home. He was there that day. So this is the kind of case when you're taking a parent who is trying to stop her child from misbehaving. She can't drive off in the car when he's hitting at the windows. He's gotten out of the car for whatever reason. She's trying to instill order and get him to settle down and discipline. We might not think that that's the best thing to do as a parent, but in fact, he suffered no bodily harm, and this is the sort of situation in which parents have such broad authority over raising their children that it is not for the state to interfere in these cases unless there is wanton or needless cruelty and the child has suffered physical harm. Well, doesn't the state have an interest in the welfare of children? Yes. In those cases, that's why DCFS or something would investigate and find out whether this is an abused child in some environment and would take the child out of the home, take steps to investigate. But that's not criminalizing a parent's right under the Constitution to raise their child and interfere in that manner. So there's a right of privacy under the Constitution for a parent to discipline his or her child. Right. Yes. Well, it's often even up this case of like Troxell v. Granville. The U.S. Supreme Court has talked about it under the 14th Amendment of due process of a parent's right to the broad authority to raise their child as they see fit. And also Illinois cases particularly have found it under the right of privacy. You know, it's the privacy interest. It's like almost an absolute, you know, we are not Sweden, say, which has outlawed the use of corporal punishment. For whatever reason, in the United States, we have decided that parents have the right to raise their children and they can exercise corporal punishment, which means taking objects, the hand, an object to the child to discipline them, but we cannot allow them to commit wanton and needless cruelty. So the standard here is that there is no physical harm to this child, no bodily harm. So... Again, it gets back to reasonableness and whether we go one route and say a per se rule, that if there's no injury to the child, then that's per se reasonable, or we're left with a pretty deferential standard of review if it's in fact a straight, you know, burden of proof would be on a reasonable doubt. Any rational try or fact could have found that this was unreasonable. Well, of course, this is why I am asking for de novo review, because this is looking at the issue of reasonableness. But I think with Justice Wolfson, when he talked about in this JP case, he said that the trial court had exceeded its authority and unjustifiably intruded on the parent's privacy rights and her fundamental liberty interest in the care and custody of her child by stepping in and deciding that the parent in that case, who was using a wooden spoon on her child, was exceeding the bounds of reasonable corporal punishment. Well, but the punishment, whether or not it exceeds the bounds of reasonableness, that is an issue for the try or fact, is it not? Whether it exceeds the bounds of reasonableness. I mean, in this particular case, you have this Mrs. Grisenik, who is witnessing this mother hitting the kid with the snowbrush, and she runs downstairs and she's saying to the mother, stop it, stop it. And the mother is not stopping it. So couldn't one argue that she was a little bit out of control at this point and exceeds the bounds of reasonableness of a parent's discipline to their child? Well... Or isn't that an issue for the court, for the try or fact? This is such a nebulous area for the court to step in and decide what's reasonable or not. For example, in this case, he's injecting his own ideas of parenting standards onto this mother. I would dispute that this woman, Rochelle, was out of control because she's able actually to respond to these other parents and say, my child is misbehaving as she's doing, you know, 1, 2, 3, 4, 5, 6, 7, 8 or so swats with a snowbrush. So she's able to at least respond like that when she gets the child in the car and they drive off. So I'm not sure that would be that out of control. But do we know that she was responding that calmly? My son is misbehaving. We don't know that. That's what the trial court heard, not us. Correct? But again, if the child has suffered no harm, why is the court system criminalizing her behavior when parents have this authority to decide, this broad authority to decide how to discipline their children? Because how about if we give parents this broad authority to take a brush and beat their kid 16 times, but for the grace of God, this child didn't get injured, but 16 times for another child may cause an injury, correct? So are we going to say then if a kid is beaten and is not injured, then no harm, no foul? And appellate court, you should make that the litmus test. Well, we're asking this for a litmus test just based on case law precedent in this state. This would be unprecedented for a parent to be found guilty of insulting and provoking domestic battery for disciplining one's child. That's never happened because punishment by its very nature to a child, no one's going to want, everyone's going to be insulted. Even a little 2-year-old is going to start crying and be upset if the mommy swats him. And the judge in this case clearly did instate his own personal standards also. He said he thought one or two swats on the bottom would have been fine. But, you know, eight times in the snow brush is not. So he's, like, drawing his line somewhere. You know, for whatever reason she used a snow brush. For example, in this Henry J.P. case, which Justice Wilson, I think, has some good points in there, that mother said she would not use her hand on the child because the hand was associated with love. So she purposely was using an object because she didn't want the child to associate the mother's hand with the opposite of love. So in this case, you know, parents have their reasons for what they're doing, and it is not for the state to be interfering in this matter when there is no bodily harm to the child. The legislature has recognized a parent's right to reasonable discipline in the definition of abuse, correct? Mm-hmm. But nowhere in the domestic battery statute is there an exception under either bodily harm or, you know, assaulting or provoking for parental discipline. I mean, are we overstepping? You know, Judge Wilson talked about the trial court overstepping its bounds. Are you asking us to overstep our bounds and step into the shoes of the legislature and basically outlaw domestic battery in certain circumstances, where the legislature certainly can do that? I'm not actually asking you to overrule it, but it's a common law rule. It's discussed even, I believe, in the Ball case. They probably refer to it as the common law defense. It dates back to that Fletcher v. Fletcher case in 1869. I mean, it goes that far rooted in our history. So it's the common law rule that it doesn't matter that there's not the statutory self-courts have found it. Thank you. You'll have additional time. Thank you. All right. Mr. Jacobson. Good morning, Your Honors. Good morning. May it please the Court. To put it simply, I believe the opposing side has a different view of the term insulting and provoking and the terms bodily harm. To put it quite simply, if you were to adopt the defense's position regarding bodily harm in this case, it would render the phrase insulting and provoking in both the domestic battery and the misdemeanor battery statutes meaning of surplusage. The terms are not coextensive. The idea behind insulting and provoking the battery, whether it be battery or domestic battery, is quite simply to protect physical integrity where there is no bodily harm. And then the context of this particular case, whether or not the victim was wearing a puffy coat that might have shielded him from body blows, is really not the issue. The issue is the amount of force that was used and how it was directed. Whether or not he suffered physical harm, to find that coextensive with insulting and provoking contact, is not the issue. The issue is whether or not this defendant, in her exercise of parental discipline, exceeded the boundaries of reasonableness. Now, the defense seems to assert the position that reasonableness is only broached when the defendant uses wanton and needless cruelty. I would submit to you that if you look at the Fourth District case, which I believe is People v. Reynolds, that the standard is reasonableness and that that is a fixed and precise term. We don't need to harken back to a case from 1869. Reasonableness in and of itself is precisely what the trial court defined it as. This court, the trial court, all judiciaries are engaged in very active line drawing that the defense suggests should not be drawn in this case. But hasn't that been in the context of cases dealing with corporal punishment? I'm sorry, Your Honor. The definition of reasonableness that has evolved has been in the context of cases involving corporal punishment where there has been physical injury. Absolutely. But I would submit to you that reasonableness and physical harm have never been coextensive. I mean, to put it quite simply, there would be no reason to have an insulting or provoking contact version of battery. Right. But isn't all discipline insulting or provoking for children? I think it is. And I think this is certainly a case of, for lack of a better word, I think this is a case of nuance more specifically. I think in this particular case there are a lot of elements. You have the defendant using an object. There are different issues there. I think more importantly, though, you have what you and Justice Shostak alluded to before. You have the defendant losing control. You have, at a certain point in time, a witness comes down, tells her to stop. She just continues, and she continues striking the child. That doesn't suggest a person in control administering corporal punishment in a reasonable manner or in a well-reasoned way. This is, quite frankly, somebody who's lost it. Well, she stopped. Did she not? Nobody stepped in to stop her. No one physically stopped her. Well, on that particular issue, she stopped in the sense that she picked up the child, tossed him in the backseat of the car, and then led the police on a little bit of a chase through Libertyville. I would call that consciousness of guilt if I were in the trial court. I mean, here you had two people running down to the parking lot telling her, look, stop, stop. And then she quickly flees the scene. I mean, regardless, this doesn't show me, at least, that this was a person in control of her actions. This was, quite simply, as you put it, somebody who lost it and started striking her child. Have you seen any cases anywhere in the country that talk about insulting and provoking corporal punishment being unreasonable? There are a couple states. There's no injury? I have not. I mean, Illinois is unique in its insulting and provoking contact battery statute. It's also unique in its application of the insulting and provoking contact statute. What Illinois classifies as insulting or provoking, I mean, that's a determination made by the courts and by the legislature. I mean, this court in a 2009 case in DeRosario found that a man sitting behind a woman and touching her with his knee, where he had the opportunity to sit somewhere else, and I believe he was trying to come on to her, but this court found that to be insulting or provoking contact. In a 2009 Illinois Supreme Court case, an act of consensual sex between minors, or I'm sorry, between a 19-year-old and a 15-year-old was determined, while it was criminal sexual abuse, the Illinois Supreme Court determined that that could be considered insulting or provoking contact, reasoning that a consensual act of sex could be considered insulting. Now, I would submit to you, though, that that's, I mean, the real issue in this case is not whether the defendant is privileged to use corporal punishment in the reasonable discipline of her child. I think we would all unquestionably agree that she is. The issue is whether or not she exceeded the boundaries of reasonableness. Not reasonableness as defined by wanton and needless cruelty, but reasonableness as in she simply lost her powers of reason. She lost control in this situation. Mr. Jacobson, what is our standard of review? Your standard of review in this particular issue is whether or not, in terms of reasonableness, the trial court's finding was against the manifest weight of the evidence. It is not de novo, as the defense suggests. I mean, in every case, the parties are coming to the appellate court with settled facts, and that we have a record prepared, the trial court made the findings that it found. That doesn't necessarily occasion de novo review. Here, the trial court made a finding that the defendant's use of force was unreasonable in connection with the other facts that the trial court found. It could have only made that finding by finding additional facts, i.e. that certain witnesses were credible in regards to how the victim was being struck. So I don't think you can disconnect one element from the other. Quite simply put, if you defer to the trial court regarding one element of the offense, you have to defer to the trial court's ability to find facts in regards to all of the elements of the offense. But now, don't we have an affirmative defense here that is without legal justification? Doesn't the statute say knowingly and without legal justification caused, what is it, action or insulting and provoking? Correct, Your Honor. Conduct? Not conduct, but I don't have it right in front of me. What's the? Insulting and provoking contact. Contact, okay. Knowingly and intentionally, without legal justification, caused insulting and provoking contact. Right, okay. I would submit that. So my questions are, two, what does that mean in this context without legal justification? And two, how does that affect the standard of review, if at all? Okay, I don't think it affects the standard. I think the standard of review is the same as our discussion a moment ago. If you defer to the trial court in regards to one element of the offense, this is, quite simply put, another element of the offense, whether or not the defendant was acting without legal justification. So the state has to prove that? Yes. I mean, it's an element of the offense. It is? Case law says that? Case law does say that, yes. I mean, quite simply, it is. But here's, now, in regards to that specific element of the offense, here's at least what I would submit as a reasoned approach to it. The defendant was permitted to use reasonable force. She had lawful justification in using reasonable force to discipline her child. But at the moment that that use of force became unreasonable, she lost the privilege of justification. And the state would have the burden of proving beyond a reasonable doubt that her conduct was unreasonable? That is correct. Okay, because that is akin to an affirmative defense, although it's a common law defense. Correct, Your Honor. Yes. In every other case that we talk about, an element that you have to prove, if a fact finder finds that you proved it, then our burden of proof is usually that could any rational trial or fact based upon this evidence have found that beyond a reasonable doubt? Not a manifest weight, but a burden beyond a reasonable doubt, burden of proof. And that's what we would look at, you know, if I was looking at a self-defense case or something like that. I see your point, Your Honor. To put it differently, I think affirmative defenses are different. I mean, it's not just – in this sense, it's not merely that it's an element of the offense, but that it's also an affirmative defense. It's something that the state – at least that the defendant had to prove and that the state had to disprove. So I think once the defendant raised the affirmative defense of, you know, parental discipline as justification, it not only became incumbent upon the defense to prove that, but for the state also to at least try and disprove it. In this case, though, I would submit that the defense never adequately proved parental – the justification to the affirmative defense of parental discipline. Because it exceeded the bounds of reason. Correct, Your Honor. Well, they would have received a jury instruction on this if this was a jury trial, wouldn't they? Absolutely. I mean, there was – sure. I would say there was slight evidence. I do think that there is – I know it's been an issue at least in a couple of other cases. I do think that the law of self-defense is – at least the law of self-defense is a little bit different in that there are a line of cases that speak about very slight credible evidence. Right. I don't think that that's implicated here, though. I mean, I think that at least as far as parental discipline is concerned, it would just be slight evidence. Well, if we were doing a jury trial and I was doing issues instruction, one of those issues would have been that the state must prove beyond a reasonable doubt this element, and the element would be that her conduct was unreasonable. It was unreasonable, you know. Under the circumstances. Yes, Your Honor. Absolutely. I think, you know, in this particular case, nothing speaks more clearly to the state's position than the fact that the defendant simply lost control. I mean, it's not whether – it's not whether solely that she was using an object. It's not whether the child was covered in a puffy coat. So it's that the defendant simply lost control at this point. So if she had just hit him twice or once with the brush, would she have lost control? I don't think it's a number. I think if she had struck him out of anger. So if she didn't – if she just didn't say a word, had no expression on her face of anger, and used the snow brush on him, pursuant to the facts that we have, you're saying that the trial court's finding wouldn't have been against the manifesto? No, I don't think it's any one – I don't think it's any one particular fact. I don't think, for example, using an object necessarily means that it's going to be domestic battery automatically, because, you know, one could – I mean, one could theoretically grab for an object because, I don't know, you have arthritic hands or something like that. Or you might strike the child four times because two simply wasn't sufficient to impart whatever lesson it is or to, you know, deal with whatever the circumstance was. So I don't think that there is any one, you know, talismanic factor. But I do think in this case there are a conjunction of factors, in particular that she was striking the child with an object, that she was striking the child while he was in a prone position, while the child was on the ground. You know, the child was attempting to at least defend himself. But as you, Your Honor, have put it, I think the most important fact is that she simply lost control. I mean, whatever lesson she was trying to teach was outside the box at that point. I mean – Losing control isn't a per se unreasonable exercise of corporal punishment. No, but I do think it's indicative of whether or not somebody is beginning to use unreasonable force or somebody is using unreasonable force. I mean, at a certain point in time, you know, I could conceive of a set of circumstances, but I think the bottom line is that once you're striking somebody out of anger, you're no longer doing it for caring, concerned reasons of discipline. You're doing it out of retaliation or revenge. Well, wouldn't a parent naturally be angry at a child who misbehaved? Absolutely. No question. But I think what's – The line is pretty hard to draw, isn't it? I agree with you that it's hard to draw. And I would submit, though, that that's precisely why we rely on the trial court and defer to its findings of facts. Now, I mean, this is – the exercise of line drawing is what trial courts and appellate courts and all of us do. Here the line was drawn where it was drawn for a particular reason. It's not because the child sustained no physical harm. It's because the defendant exceeded the reasonable use of force. The justification no longer applied. It's not because she hit him 16 times as opposed to 12. It's not because she hit him with an ice scraper as opposed to, I don't know, a box of tissues or a CD bumble that you would keep in the car. I mean, it's not any one thing or the other. It's that she just simply lost him. So I would submit that that's precisely the point at which state intervention is warranted because we do have an interest in the welfare of children, as you, Your Honors, pointed out. While you have a minute left, do you want to talk about that $100 to save place? Absolutely. Is there a particular question or – that you wanted to ask me about it or – Do you think that was reasonable? That was within the bounds of reasonableness? No. The trial court ordered that she contribute $100 to save place. The defense is submitting that the trial court exceeded its authority by ordering her to contribute that $100 to save place. Right. That's based on the defense's position that save place is not an anti-crime program under the conditional discharge statute. And then during the briefing cycle, the defense submitted portions of the homepage from save place and its appendix. The state moved to strike it. Your Honor struck that from the appendix to the record. I would note simply that Judge Barone is familiar, obviously, with the program that is taking place in his area. Even if this court were to have allowed the save place homepage printout, it's clear that save place is an anti-crime program. Its purpose is to deter domestic violence and allow victims of domestic violence to report crimes. I think that's the very essence of crime prevention. So, I mean, to me, clearly it falls within the provisions of an anti-crime program under the conditional discharge statute. Quite simply, as we were discussing before, I think the most important point in this case is that while defendant's use of force may have been justified in disciplining her child initially, she exceeded the boundaries of the justification when her use of force became unreasonable, and that would support the trial court's conviction of battery by insulting and provoking contact. Thank you. Thank you, counsel. Ms. Weck? May it please the court? As far as the, you know, I put it all in the briefs, our position that this save place does not meet the definition of a local anti-crime program whatsoever. I'm sorry, your Honor, stuck that part of the appendix. Is it a woman's shelter or a shelter for domestic? It's a domestic battery shelter, domestic violence shelter, and it has nothing to do with crime reporting. It's not under the statute. Local crime assistance program is like agencies that are supposed to report crime. It's not what the definition exactly is. Local anti-crime program is a plan established, designed to encourage the public to report incidences of crime to local law enforcement agencies and to assist such agencies in the apprehension of criminal offenders. It also needs a drug alert program or a drug task force. None of those definitions apply to this case. Safe place, Google it, that's what the safe place is, is domestic violence shelter. There's no evidence that they had anything to do with this shelter and it was a forced contribution, which we would submit as illegal, void. But anyway, going back to the main point, DeNovo review seems to be increasing, from my observation, in the appellate courts. I cited several cases in the reply brief, recent cases from 2010 and 2011, in which they reviewed DeNovo's such questions of whether uncontested facts were sufficient to prove the offense of home invasion, for example. Or whether the defendant's act of thrusting his hips at a child was a substantial step toward the commission of an aggravated criminal sexual abuse of a child. So for this matter, I'm asking DeNovo review for the question of whether the undisputed facts met the definition of unreasonable criminal discipline. I'm looking at the definition in the FW case, the way they define discipline. It says discipline has been interpreted by the courts to extend to reasonable corporal punishment. The parent who utilizes corporal punishment exceeding the boundaries of reasonableness may, depending on the circumstances, be subject to prosecution for domestic battery. So depending on the circumstances, is that for us to determine? This is the whole problem here, is that it's judges that are inserting their own personal notions of parenting standards, as opposed to a criminal behavior. Because parents have such this fundamental liberty interest, this privacy right under the Constitution, to raise and control their children. And when the child suffers no physical harm, such as in a case like this, it simply doesn't matter if the parent was out of control or not. The question is whether or not the child is suffering. Is corporal discipline being exercised? Yes. Is the child harmed? No. So this, in our position, it meets the definition of reasonableness. The child's not harmed. Opposing counsel suggests that this would take the wind out of the sails of the insulting or provoking domestic battery context by saying that you could not be found guilty of this. Well, the fact is that if you are exercising corporal discipline, corporal punishment, as your affirmative defense to insulting or provoking, that's the question. There are 50 cases where a parent commits an insulting or provoking battery on a child when he's not exercising corporal punishment. For example, say the child's walking down the stairs and the parent throws a cake in their face. That would be definitely maybe insulting or provoking, no bodily harm. But there's no discipline involved there. And that's worse than beating them with a snow brush. Well, under the thing of care and control of your children and exercising corporal discipline, the case of throwing a cake in your child's face, you think it's probably funny, or tickling a child, say. How about hair pulling where you're not going to see any injuries unless you do a, you know, open up the skull and you see maybe a- Pull some hair out or- Yeah. How about a hair pull where you don't see anything? Well, perhaps bodily harm is existing in the case when hair is being pulled to that extent. There's the pain. But, see, you're asking us to draw a line and say if it's insulting or provoking, there are no injuries. It can't be a domestic battery because a parent can exercise corporal punishment. But how about you have a kid who's being drugged by the hair? No hair comes out. And, you know, do you want us to draw a line and say that's never going to exceed the bounds of corporal punishment that a parent has? Well, presumably if the child testifies in that case that he's suffered pain from his head, the judge makes a finding there was bodily harm from the pain, that would be a different situation. What we have in the situation here is that there is no physical injury. There is no bodily harm. Did the kid mention something about his ankle hurt or something? Yeah, the judge decided that there's no bodily harm, that they apparently found no connection between whatever the Snowbrush Act incident and the leg. That's what the judge is finding in this case. Rochelle Green asks this Honorable Court to reverse her conviction of insulting or provoking a domestic battery. Thank you very much. Thank you. At this time, the Court will take the matter under advisory.